HALL v. HALL.

1. FRAUD cannot be predicated on a calculation of interest on a bond, after a lapse of fifteen years, where neither the bond nor a memorandum thereof have been preserved.
2. EXCEPTIONS which are argumentation should not be considered on appeal.
3. FINDINGS OF FACT by a Circuit Judge will not be disturbed unless manifestly against the weight of the testimony, or without testimony to support them.

Before ALDRICH, J., Kershaw, July 31, 1894.    Affirmed.

This was an action commenced by Louisa Hall July 22, 1892, against Harrison H. Hall, to set aside a deed of conveyance on the ground of fraud.    Judgment for defendant. Plaintiff appealed.

The following is the decree of Judge Aldrich, appealed from:

This case has been before the Supreme Court (41 S. C., 163), and now comes before this Court the second time upon the record, the evidence taken at the trial, and the argument of counsel.    The opinion of the Supreme Court states the law applicable to the issues involved with great clearness and perspicuity, and it is unnecessary to quote therefrom. Adopting the law then declared as a part of this decree, I will without delay discuss the issues.    Plaintiff seeks to set aside her conveyance of real estate to defendant upon the ground that said conveyance is void for fraud, deception, overreaching, practiced upon her by defendant, and, as results, alleges that she is entitled to the premises and the rents and profits thereof, &c.    Defendant denies the plaintiff's allegations of fraud, deception, &c., and pleads the statute of limitations.    The defendant is the son-in-law of plaintiff, and was the administrator of the estate of the husband of the plaintiff.    On January 15, 1877, plaintiff was indebted to the defendant to the amount of $349.70, which amount she then formally agreed to pay to defendant as

3—45

follows: $174.85 on January 1st, 1878, and $174.85 on January 1st, 1879, with interest on said sums of money, until they were to become respectively due, at the rate of eighteen per cent. per annum, and at the same time, to secure said debt, plaintiff executed and delivered to defendant a mortgage of the 484 acres of land described in the complaint and the subject-matter of this action. This debt and mortgage are stated as allegations of the complaint, and admitted by the answer; hence they constitute undisputed facts in this case. The rate of interest charged, though higher than the rate now allowed by statute, was then lawful, and frequently agreed upon. On November 12th, 1880, plaintiff duly and formally conveyed said 484 acres of land to the defendant for an expressed consideration of $584.10.

I think that the consideration of said deed was the amount due to the defendant upon his said mortgage, and the debt it was given to secure, whatever that amount may have been. Plaintiff, in her complaint, alleges that the amount then due could not have been more than $513, and her counsel in argument says the true amount was about $498, as I remember his figures. This may be correct, if we calculate the interest according to strict technical law, allowing eighteen per cent. up to maturity, and then seven per cent. to date of the deed. It was necessary for the Supreme Court, in comparatively recent years, to consider and determine this much disputed question of interest, and in several cases, before the rule contended for by counsel for plaintiff was established. Under such circumstances, and when urged as a badge of fraud, moral turpitude, is it right to assume that the defendant herein, a plain, ordinary business man, knew the law, and, knowing it, used his knowledge as a fraudulent device in overreaching the plaintiff? If so, what warrant is there, either in law, morals or common sense, to say in the next breath that plaintiff was ignorant of the law? I think that if the interest on the mortgage debt is calculated from the day it began to run up to the date of the deed, at the rate of eighteen per cent. per annum, the

aggregate of the debt will be found to be just the amount, or very nearly the amount, stated as the consideration of the deed. The parties had the right to contract as they saw proper, and, in the absence of all proof to the contrary, and the custom as it existed years ago when this transaction took place, it seems to me to be only a just and natural conclusion to assume that the parties intended to do just what they did do, calculate the interest at eighteen per cent. There is no fraud here.

Defendant being a mortgage purchaser of the mortgaged premises, and the consideration being the mortgage indebtedness, the burden is upon him to show that the contract of purchase was a new one, honest, fair, open, and for a proper consideration. As to plaintiff's allegations that she was old, infirm, and ignorant, and that defendant took advantage of her infirmities, the facts are, that in 1880, when she made the contract for the sale of the premises and executed the deed, she was seventy years of age, not able to read or write, but otherwise a woman of average mental capacity, strength, and vigor, and fully able to contract. Since then fourteen years have passed, and these years added to seventy makes the old lady naturally weak and infirm of strength. Her testimony given at this date, at eighty-four years of age, shows that she is in possession of her mental faculties still, and understands whatever she talks about. If such is her present condition, it is hardly necessary to say that in 1880 she was not too old, ignorant, and infirm to make a valid contract. There is nothing in these allegations. The evidence shows that the plaintiff prior to 1880 and now knows the difference between a mortgage and a title deed. When mortgage became due, defendant was neither grasping nor oppressive, because, notwithstanding plaintiff would pay nothing upon her admittedly just debt, either purchase or interest, he waited upon her patiently, indulged her nearly two years. Even then he did not sue her. On the contrary, he seems to have gone to her and talked with her in reference to the debt.

The idea arises, and naturally, why, if this land was not worth what plaintiff now says it was, did not plaintiff, or one or more of her numerous grown sons, daughters, and sons-in-law, take advantage of defendant's indulgence— either pay up the mortgage or get some one else to take it up? Defendant did not want the land; he wanted the money due to him. Plaintiff could not pay the debt, and, after talking over the matter, she and defendant agreed upon a new contract, the conveyance of the land. In these talks, defendant said nothing to deceive the plaintiff; the facts were as well known to her as to defendant; and defendant, by his indulgence and by his future conduct, shows that he was not anxious to own the land, much preferred the money, and that he was mindful of plaintiff's interest.

As to the value of the 484 acres, a paper entitled report of commissioners in partition, filed in 1876, but whether it was ever confirmed by a court or not does not appear, was introduced in evidence. By this report, it appears that said 484 acres was a part of the real estate of plaintiff's deceased husband, and was by them appraised at $1,000. The real estate of intestate was all of the same character; one tract, and besides that given to the plaintiff, consisted of some 1,657 acres, valued at $2,000. This unexplained difference in value is only one of the many peculiarities, not to use a harsher term, apparent upon the face of this "report." It follows no rule of law or justice in its division of the land among the children, greatly varies in the quality and value of the land given to each child, giving to some two or three times as much in quantity and value as to others, without the slightest explanation or provision for equalization among the heirs, and winds up by giving to three children together one tract, valued at only $72.23. This report may have been confirmed, as we are not told that; all things are possible; but it certainly does not bear the imprint of either law, sense, or justice.

Take the report for what it is worth, and assume that the land was worth $1,000 in 1876, and the evidence shows

that in the year 1880 it had greatly depreciated in value. In 1876 the land, save the small part cleared, was well wooded, contained a forest of pine trees of original growth, hence the name of the country the "sand hills" or "pine lands." The intestate had preserved his trees. As soon as plaintiff got the land, or soon thereafter, she sold the turpentine rights in these trees to parties engaged in procuring turpentine, &c. The consequence was that the trees were soon boxed, &c., and in place of valuable timber trees the land was despoiled of its chief value and left as a poor, sandy farm, covered with the ruins of its former value and beauty. Some of the witnesses said that the price of these ruins was enough, in their opinion, to pay the debt due defendant. If so, then the value of the land with the trees boxed could not have been more than $500. Again, when intestate died, he left the land in good condition— the buildings, fences, &c., were well kept up. Plaintiff realized little or nothing from the land, and allowed the buildings, fences, &c., to run down, go to wreck, so much so that an intelligent witness said the buildings, &c., were not worth $100—possibly $150. The evidence shows that this kind of land for many years, when sold, has usually sold for about $1 per acre. That was about its assessed value for taxation. Similar lands near by were sold at sheriff's sale for seventy-one cents per acre; and the purchaser at such sale allowed a neighbor to take a part of his purchase at the same price. It is true that some of the witnesses testified that the land was of much greater value, but this testimony is mere opinion, and was sustained by the trend of the evidence generally.

Actions speak louder than words, and facts are stronger than opinions. Tested by themselves, let us see if defendant spoke the truth, when he said he did not want the land, preferred the money, and thought that he paid the full value of the land for it. A short time after his purchase, the exact time does not appear, defendant agreed to sell these 484 acres to one C. W. Hyatt for about $650. The

evidence shows that he was urged to buy the land by the plaintiff, his mother-in-law, as she wanted to live on the old homestead. Defendant's debt at that time, with interest added, must have been considerably over $600. Defendant agreed to sell the land to Hyatt for $100 cash and $300 on credit (Hyatt says the credit portion may have been $400) and his wife's land, 157 acres, valued at $247.23 by the commissioners in the report above alluded to, but taken by defendant in the trade at a valuation of $250—these making the purchase money in such a trade amount to $650. Hyatt took possession of the land, kept it for two or three years, and threw it back upon defendant's hands. If Hyatt, the son-in-law of the plaintiff, and the numerous sons and daughters, even at that late day, considered the land so valuable, why did they allow this second chance to recover the land, to get it back for the admitted debt due to the defendant, to pass, and without one effort to accomplish that purpose? Hyatt, when examined as a witness, says, that he regarded the 484 acres as valuable land, worth from $1,800 to $2,000, and that he considered that he was paying that amount for it, as he valued his wife's land at $8 per acre, viz: about $1,200 or $1,300. It was stated in the trade as valued at $250, in the commissioners' appraisement at $247.23, which was its full value, and Hyatt's testimony is simply preposterous and absurd.

To return to the execution of the deed of the plaintiff to defendant, and view it in the light of every circumstance bearing upon the transaction which existed prior to or at the date of its execution, or that has arisen since, and it will be seen that the transaction was fair, honest, and open. After plaintiff had agreed to sell the land to defendant, she left her house and went to a trial justice, or notary public, residing in the community, but at some distance from her house. The plaintiff was present, therefore, of her own volition, while the defendant was absent; she heard the calculation made, witnessed whatever then took place, saw the deed prepared, heard it read over to her, signed, executed,

and delivered it as the law directs. As against this evidence, plaintiff submits the evidence of herself and chiefly her children, or some of them, that she was ignorant, imposed upon, &c.

I do not think she was imposed upon or deceived in any respect. As this case was heard by me without the aid of a jury, very naturally I observed the witnesses, the substance of their evidence, and their manner while testifying. I do not mean to be harsh, but candor and duty require that I should say that I was not favorably impressed by several of plaintiff's chief witnesses. I do not mean to say that they did not speak the truth, but I did not like the spirit in which they spoke. I do not feel called upon to speak about what was said about the new railroad and depot recently established near the land in dispute, and that those circumstances prompted this action. Why a suit is brought is one question, and does not necessarily concern the Court, because the Court considers a case upon its merits. In this case I have considered the merits as presented, and that is sufficient. I conclude, and hold as matter of fact, that the purchase by defendant from plaintiff of the land in dispute was an honest, open, fair transaction; that the consideration was reasonable, proper, and fair; and, as conclusion of law, that defendant's title is valid.

As to defendant's plea of the statute of limitations, plaintiff's counsel argue that defendant cannot ask nor this Court render judgment upon these issues, because they are *res adjudicata*. I do not think so. The Circuit Judge at the former trial did not decide these issues, nor did the Supreme Court pass upon them. If so, where is the judgment upon which plaintiff can rest the plea of *res adjudicata?*

Defendant's first "plea" is, "that more than ten years having elapsed since the accrual of any right of action to plaintiff, she is barred and estopped from maintaining any action herein against the defendant by the statute of limitations." Counsel have neglected to furnish me with the date of the service of the summons herein upon defendant,

and the answer is not dated. I cannot guess at such matters. It is not clear when plaintiff surrendered and defendant entered into possession of the premises. The contract between Hyatt and defendant is not fully before the Court, nor does it appear just when and how he was in possession of the premises. What interest, if any, plaintiff had in Hyatt's possession is not shown, except what Hyatt says, that he made the trade at her request. Under these circumstances, I am not prepared to decide this issue, though the evidence tends to the support of this plea.

Defendant next alleges: "That more than six years having elapsed since the accrual of any right to the plaintiff to demand an accounting of rents and profits by the statute of limitations." This plea was evidently interposed for the protection of defendant in the event judgment had been given against him upon the merits; and usually a court would not consider it as judgment upon the merits if in favor of defendant. However, as something was said in evidence about defendant's having gone into possession of the premises prior to his deed, it may be proper to say that I hold, first, defendant did not go into possession prior to the date of his deed, and, second, if he did, then this plea is plaintiff's action for rents, &c.

Defendant further says: "That more than six years having elapsed since the accrual of any rights of actions to the 'plaintiff for fraud, as alleged in the complaint, the plaintiff is barred and estopped from bringing any action for fraud against the defendant by the statute of limitations." This plea is sustained. Plaintiff knew every fact upon which she bases her action when she made the deed to defendant more than eleven years before she began her action.

Wherefore, it is ordered, adjudged, and decreed, that the summons and complaint herein be, and hereby are, dismissed, with costs in favor of defendant and against plaintiff.

*Messrs. A. B. Stuckey* and *J. D. Kennedy*, for appellant.

*Messrs. J. T. Hay* and *W. D. Trantham*, contra.

Sept. 9, 1895.  The opinion of the Court was delivered by

MR. JUSTICE POPE.  This action was originally between the present plaintiff and Harrison H. Hall as defendant.  In this plight, it came before this Court, when our former judgment was rendered, awarding plaintiff a new trial.  And with these same parties, it came on for a hearing before his Honor, Judge Aldrich, at the June, 1894, term of Court of Common Pleas for Kershaw County, in this State.  After an appeal was taken from Judge Aldrich's decree, the defendant, Harrison H. Hall, departed this life, leaving a will, of which W. W. Hall was nominated and qualified as executor.  On the 24th day of April, 1895, this Court passed an order, substituting the said W. W. Hall, as such executor, the party defendant.

A full history of the issues involved in this action is set forth in the opinion of Mr. Justice McGowan in *Hall* v. *Hall*, 41 S. C., 163.  By that judgment the cause was remanded to the Circuit Court for a new trial, at which the defendant was required to make it plain that the conveyance, made to him in the year 1880 by the plaintiff, Louisa Hall, for the 484 acres of land, was fairly and voluntarily made upon a separate and independent contract of sale, disconnected from the mortgage contract; and, also, that the plaintiff knew the character and effect of the paper she signed, and that she signed it voluntarily and intelligently.  Under these specific directions, the whole cause was reheard by Judge Aldrich, who had all the witnesses before him in giving their testimony, except Mrs. Hall, the plaintiff, whose testimony was taken out of Court.  After this hearing, Judge Aldrich rendered his decree, wherein he found every issue in favor of the defendant, and dismissed the complaint.  The plaintiff is now before this Court a second time, on five exceptions, as follows:

"1. His Honor erred in holding that the defendant had the right to calculate interest on the mortgage debt at the rate of eighteen per cent. up to the time of the making of the deed, when the mortgage called for that rate of interest

only up to the maturity of the instalments of the debt, and no longer; whereas, he should have held that the defendant, in calculating such rate of interest after maturity of such instalment, took advantage of plaintiff, an aged and illiterate woman—such advantage being a fraud perpetrated upon her, and should have vitiated the deed.

"2. That his Honor should have held, that whether such calculation of interest was a fraud or a mistake, it enured to the benefit of the mortgagee, placed the mortgagor at a disadvantage, and should have vitiated the deed.

"3. Because his Honor erred in concluding that a calculation of the interest at eighteen per cent. would aggregate the amount or nearly the amount of the consideration expressed in the deed. Whereas, instead, his Honor should have calculated that one or more payments must have been made upon the debt, because a calculation of eighteen per cent. interest upon the original debt, to the making of the deed, would be more, and that a calculation of the interest at eighteen per cent. on the instalments of the debt until they became due, and seven per cent. afterwards, would aggregate less than the consideration expressed in the deed, and that, therefore, it is reasonable to conclude that the eighteen per cent. must have been calculated to the time of making the deed, and that one or more payments must have been made upon the debt, as testified by the plaintiff and others.

"4. That his Honor erred in holding that the purchase by the defendant from the plaintiff of the land in dispute was an honest, open, and fair transaction, that the consideration was reasonable, proper, and fair; as conclusion of law, that defendant's title is valid. Whereas he should have held that the defendant took advantage of plaintiff, an aged and illiterate woman, used his position as mortgagee to influence her, that no new consideration passed between them, no price agreed upon for the land, that the transaction was not disconnected from the mortgage, that plaintiff did not know the difference between a mortgage and an

absolute conveyance, and should have concluded that said deed was null and void.

"5. That his Honor erred in sustaining the plea interposed by the defendant, that the plaintiff, not having brought her action within six years from the discovery of the fraud, is barred.    Whereas he should have held, that Judge Witherspoon having failed on the former trial of the cause to sustain their plea, and defendant not having excepted thereto, he is now debarred from interposing it."

So far as the first exception is concerned, we fail to notice in the decree that the Circuit Judge held that the defendant had the right to calculate the interest at eighteen per cent. from date of debt to date of deed.    The Circuit Judge does in his decree refer to what was a common practice amongst our people, to allow the same interest after maturity as was stipulated in their notes they should bear up to maturity; and that this practice prevailed until some contract was brought before the Supreme Court which held that, as a contract in writing must be governed by its terms, the interest in excess of the legal rate was only contracted to be paid up to maturity, unless the obligation provided by its terms for an extension of such interest in excess of the legal rate beyond the maturity of the note.    This Court never said parties to such notes may not have intended differently, and, therefore, honestly carried out their intentions.    So the Circuit Judge here, in discussing the question whether the fact that the interest beyond—in excess of—legal interest, after the instalments of the bond here in question had matured, was of itself a badge of fraud, held it was not, and, in the course of his remarks, said: "The parties had the right to contract as they saw proper, and, in the absence of all proof to the contrary, and the custom as it existed years ago, when this transaction took place, it seems to me to be only a just and natural conclusion to assume that the parties intended to do just what they did do, calculate the interest at eighteen per cent. There is no fraud here."    We fail to see, therefore, that the

decree of the Circuit Judge is liable to the exception of the appellant, as he has chosen to phrase it. Now, as to the other allegation in the exception, imputing error to the Circuit Judge in failing to find that advantage was taken of this good old lady by the defendant's testatrix. This is a question of fact, and the record discloses an abundance of testimony upon which the Circuit Judge may have depended in reaching his conclusion, and under our well-settled rule in such cases, we will not overrule his conclusions as to facts. We may be pardoned for saying that this is the second Circuit Judge who has heard this testimony, both of whom were alike impressed that the preponderance of the testimony was with the defendant. Notwithstanding the concurrence of the two Circuit Judges on this point, we have given the testimony a very close study, so that full justice might be done the plaintiff, who is now more than fourscore years of age, and also a widow, but we cannot see our way clear to upsetting this transaction on the point here raised.

As to the second exception, it and the third will be considered together. It is difficult to reproduce the calculation of interest so as to reach the amount named in the deed as its consideration. If eighteen per cent. interest was charged upon the $349.70 from its date, 15th January, 1877, to date of deed, 12th November, 1880, it would amount to about $609.47, and as the consideration named in the deed is $584.10, this would make the debt about $25.37 in excess of the consideration of the deed. If, however, we apply the rule fixed by law, by calculating interest on each instalment from date to maturity at eighteen per cent., and thereafter at seven per cent. up to date of deed, we find that the consideration named in the deed—$584.10— is about $76.60 in excess of this calculation of principal and interest—$507.50. Therefore, relying upon probabilities, the first mode, as it is suggested by the Circuit Judge, was that adopted by the parties, and it may be that the small payment testified to by the good plaintiff, of $19, may, when

interest is allowed, account for the $25.37. It must be apparent that a distance of fifteen years nearly from the time these witnesses testified as to what occurred in November, 1880, would necessitate some inaccuracy as to the details of a settlement. This might easily have been corrected by the parties themselves, if the original bond had been preserved, or a memorandum of the calculations of debt and interest had been preserved. Such differences, however, after this interval, fifteen years, cannot be made to play such an important function as that of convicting a reputable citizen of willful or even legal fraud.

It is due the bar that we should say that these exceptions are objectionable in form—they are really argumentative, and if this Court would enforce its rules strictly, such exceptions would not be considered. We have not enforced the rule, because its enforcement was not demanded by the respondent. Let the exceptions be overruled.

So far·as the fourth exception is concerned, it really relates to a finding of fact by the Circuit Judge. We are not prepared, by any means, to say this conclusion of the Circuit Judge is without any testimony to support it, or is opposed to the overwhelming weight of the testimony. Therefore, under our rule in such cases, we will not disturb the findings of the Circuit Judge.

Lastly, we will dispose of the fifth exception. When the Circuit Judge decided that the defendant, with the burden of proof·upon him, had successfully maintained all the requirements of this Court in its judgment granting a new trial of all the issues without prejudice, there was no necessity for his having passed upon the plea of the statute of limitations, to wit: that the plaintiff had full knowledge of all the facts she claims will establish fraud for more than six years before she instituted her action to set aside the deed she had made on the ground of fraud practised upon her by defendant's testator. If the facts constituting frauds did not exist, what use was there for any plea of the statute

of limitations? However, the Circuit Judge did pass upon this plea as affected by the facts proved, and sustained such plea. His conclusion is an abstraction, so far as this case is concerned, but we cannot say that, as an abstract proposition of law, it is incorrect.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.